1  Michael E. Stone, State Bar No. 46016
   Leo B. Siegel, State Bar No. 116841
2  STONE - SIEGEL LAW FIRM
   1726 Seabright Ave.
3  Santa Cruz, CA 95062
   831/713-5773 Telephone
4  831/713-5797 Facsimile
   mike@stonesiegel.com; leob@legalsiegel.org
5
   Attorney for LOUIS STROMBERG
6

7

8
                    UNITED STATES DISTRICT COURT
9
                  NORTHERN DISTRICT OF CALIFORNIA
10
                        SAN JOSE DIVISION
11

12  LOUIS STROMBERG,                    CASE NO.

13          Plaintiff,
                                        COMPLAINT FOR FRAUD; BREACH
14      vs.                             OF CONTRACT; VIOLATIONS OF THE
                                        CALIFORNIA CORPORATE SECURITIES
15  MATTHEW HARDER and CHRISTINE        LAW OF 1968; BREACH OF FIDUCIARY
    MARTINEZ, individually, and as TRUSTEES  DUTY; FOR JUDICIAL FORECLOSURE;
16  OF THE CHRISTIE MARTINEZ AND        AND FOR AN ACCOUNTING.
    MATTHEW HARDER REVOCABLE
17  TRUST DATED DECEMBER 1, 2007;       PLAINTIFF DEMANDS A JURY TRIAL
    SOUTHWEST FINANCIAL SOLUTIONS,
18  LLC; GARY L. GLOER; FLORIDA KEYS
    ACQUISITIONS, LLC; JODIE ANN
19  JONES; BAY AREA HOUSING, LLC;

20          Defendants.
                                    /
21

22

23
                     PRELIMINARY ALLEGATIONS
24
        1.  Plaintiff is, and was at all times mentioned herein, a resident of the State of California,
25
    residing in Santa Cruz County.
26
        2.      Defendant SOUTHWEST FINANCIAL SOLUTIONS, LLC. (hereinafter
27
    "SOUTHWEST") is, and was at all times mentioned herein, a limited liability company, organized
28
    and existing under the laws of the State of California, with its principal place of business in the State

of California.

3.  Defendant MATTHEW HARDER (hereinafter "HARDER") is, and was at all times mentioned herein, a resident of the State of California.  Defendant HARDER, is the managing member of Defendant SOUTHWEST.

4.  Defendant FLORIDA KEYS ACQUISITIONS (hereinafter "FLORIDA KEYS") is, and was at all times mentioned herein, a limited liability company, organized and existing under the laws of the State of Florida, with its principal place of business in the State of Florida.

5. Defendant GARY L. GLOER (hereinafter "GLOER") is, and was at all times mentioned herein, a citizen of the State of Florida.  Defendant GLOER, is the managing member of Defendant FLORIDA KEYS.

6. Defendant BAY AREA HOUSING, LLC (hereinafter "BAY") is, and was at all times mentioned herein, a limited liability company, organized and existing under the laws of the State of Maryland, with its principal place of business in the State of Maryland.

7. Defendant JODIE ANN JONES  (hereinafter "JONES") is, and was at all times mentioned herein, a citizen of the State of Maryland.  Defendant JONES, is the managing member of Defendant BAY.

8.  This court has original jurisdiction under 28 USC § 1332, in that it is a civil action between citizens of different states in which the matter in controversy exceeds, exclusive of costs and interest, seventy-five thousand dollars.  This court has supplemental jurisdiction under the Securities Act of 1933, 15 USC §§ 77a through 77aa, and 28 USC § 1331.

9.  Plaintiff is informed and believes and there alleges that Defendant SOUTHWEST, is, and at all times herein mentioned was, controlled, dominated, and operated by Defendant HARDER, as his individual business and alter ego, in that the activities and business of Defendant LLC were carried out without respect for the formalities involved in operating a California Limited Liability Company, and Defendant HARDER entered into personal transactions with Defendant SOUTHWEST, without adequate record keeping.

10.  Defendant SOUTHWEST, is, and at all times herein mentioned was, a mere shell, instrumentality, and conduit through which Defendant HARDER, carried on his real estate investment

1  business in the name of the LLC, exactly as he had conducted it previous to formation of Defendant

2  SOUTHWEST, exercising complete control and dominance of such business to such an extent that

3  any individuality or separateness of Defendant  SOUTHWEST, and Defendant HARDER, does not,

4  and at all times herein mentioned did not, exist.

5       11.  Adherence to the fiction of the separate existence of Defendant SOUTHWEST, as an

6  entity distinct from Defendant HARDER, would permit abuse of the corporate or LLC privilege and

7  produce an inequitable result in that Plaintiff was at all times material to this action lead to believe

8  by Defendants that Defendant HARDER was assuming responsibility and the obligation to invest the

9  funds Plaintiff turned over directly and/or indirectly to him were going to be invested into notes

10  secured by deeds of trust in first position against title to real property.  Defendant HARDER, further

11  lead Plaintiff to believe that the Addenda HARDER, turned over to Plaintiff, which instruments

12  purportedly evidenced and secured his invested funds, and which Defendant HARDER, signed on

13  behalf of Defendant SOUTHWEST, were in fact the obligation of Defendant HARDER.

14       12.  Plaintiff is informed and believes and there alleges that Defendant FLORIDA KEYS, is,

15  and at all times herein mentioned was, controlled, dominated, and operated by Defendant GLOER,

16  as his individual business and alter ego, in that the activities and business of Defendant LLC were

17  carried out without respect for the formalities involved in operating a California Limited Liability

18  Company, and Defendant GLOER entered into personal transactions with Defendant FLORIDA

19  KEYS, without adequate record keeping.

20       13.  Defendant FLORIDA KEYS, is, and at all times herein mentioned was, a mere shell,

21  instrumentality, and conduit through which Defendant GLOER, carried on his real estate investment

22  business in the name of the LLC, exactly as he had conducted it previous to formation of Defendant

23  FLORIDA KEYS, exercising complete control and dominance of such business to such an extent that

24  any individuality or separateness of Defendant  FLORIDA KEYS, and Defendant GLOER, does not,

25  and at all times herein mentioned did not, exist.

26       14.  Adherence to the fiction of the separate existence of Defendant FLORIDA KEYS, as an

27  entity distinct from Defendant GLOER, would permit abuse of the corporate or LLC privilege and

28  produce an inequitable result in that Plaintiff was at all times material to this action lead to believe

by Defendants that Defendant GLOER was assuming responsibility and the obligation to invest the funds Plaintiff turned over directly and/or indirectly to him were going to be invested into notes secured by deeds of trust in first position against title to real property.  Defendant GLOER, further lead Plaintiff to believe that the Addenda GLOER, turned over to Plaintiff, which instruments purportedly evidenced and secured his invested funds, and which Defendant GLOER, signed on behalf of Defendant FLORIDA KEYS, were in fact the obligation of Defendant GLOER.

15.  Plaintiff is informed and believes and there alleges that Defendant BAY AREA HOUSING, is, and at all times herein mentioned was, controlled, dominated, and operated by Defendant JONES, as his individual business and alter ego, in that the activities and business of Defendant LLC were carried out without respect for the formalities involved in operating a California Limited Liability Company, and Defendant JONES entered into personal transactions with Defendant BAY AREA HOUSING, without adequate record keeping.

16.  Defendant BAY AREA HOUSING, is, and at all times herein mentioned was, a mere shell, instrumentality, and conduit through which Defendant JONES, carried on his real estate investment business in the name of the LLC, exactly as he had conducted it previous to formation of Defendant BAY AREA HOUSING, exercising complete control and dominance of such business to such an extent that any individuality or separateness of Defendant  BAY AREA HOUSING, and Defendant JONES, does not, and at all times herein mentioned did not, exist.

17.  Adherence to the fiction of the separate existence of Defendant BAY AREA HOUSING, as an entity distinct from Defendant JONES, would permit abuse of the corporate or LLC privilege and produce an inequitable result in that Plaintiff was at all times material to this action lead to believe by Defendants that Defendant JONES was assuming responsibility and the obligation to invest the funds Plaintiff turned over directly and/or indirectly to him were going to be invested into notes secured by deeds of trust in first position against title to real property.  Defendant JONES, further lead Plaintiff to believe that the Addenda JONES, turned over to Plaintiff, which instruments purportedly evidenced and secured his invested funds, and which Defendant JONES, signed on behalf of Defendant BAY AREA HOUSING, were in fact the obligation of Defendant JONES.

18.  Plaintiff is informed and believes, and thereon alleges, that at all times material hereto, all of the Defendants named herein, were acting as the agent, servant or employee of each other, and in doing the acts hereinafter alleged, was acting within the course and scope of said agency, employment or representation, with the knowledge, consent, authorization and approval of the each other defendant.  To the extent any of the actions of said agents, servants, or employees was not expressly authorized, said actions were ratified and approved by the other defendants.

19.  Beginning on or about July 20, 2013, Plaintiff consulted with, and was offered by Defendant HARDER, who was acting in the capacity of an "Investment Advisor," as that term is defined in California Corporations Code § 25009, or as a Real Estate Broker, as the term is defined under California law, the opportunity to begin investing in a series of seven (7) separate real estate loan investments. Each of the investment offers from Defendant HARDER qualified as a "security," as the term is defined in California Corporations Code § 25019.  As a material part of each offer Defendant HARDER made to Plaintiff, and in order to induce Plaintiff to enter into the investment, Defendant HARDER represented to Plaintiff that he would only invest Plaintiff's funds into real estate investments that were secured by deeds of trust in first position against title to the real properties that were to secure the investments.  The particular transactions that are the subject of this action are hereinafter referred to as: Good Roof; Rantoul; Oregon; Ohio; New Mexico; Cheney; and the Energy Transaction.  These investments will be individually and more specifically described in the following subparagraphs. On each of the investments, however, Defendant HARDER represented to Plaintiff that his funds would only be invested in notes secured by deeds of trust or mortgages in first position against title to the property serving as security.

a. The Good Roof Investment: In July of 2013, Plaintiff invested the sum of $320,000 with Defendant HARDER that was evidenced by an instrument HARDER drafted, which was entitled "Addendum to Ownership of Note Purchase" (hereinafter the "Good Roof Addendum").  Through the Goodroof Addendum, Defendant HARDER arranged for Plaintiff's funds to be paid to Defendant FLORIDA KEYS, to be invested into two notes (one by an individual named McClennan, and one by his corporation, Dr. Goodroof, Inc.).  The notes were purchased from Busey Bank in July of 2013, and had a total face value of

$800,000.  The notes are secured by two mortgages against real property commonly known as 11461 Tamiani Trail, Punta Gorda, FL.  A true and correct copy of the Goodroof Addendum is attached to this Complaint as **Exhibit "A,"** and incorporated herein by that reference.  Plaintiff was paid back $20,800 as a return on his investment to December 16, 2013, and another $5,200 on February 27, 2014, but nothing else for his investment in the Good Roof Transaction.  Defendant GLOER, on behalf of Defendant FLORIDA KEYS, thereafter signed another "Addendum to Ownership of Note Purchase" form agreeing to pay 19 ½ % interest to July 31, 2014, at which time the full balance owed to Plaintiff was to be due and payable.  A true and correct copy of the second Goodroof Addendum is attached as **Exhibit "B"** to this Complaint, and incorporated herein by that reference.

b. The Rantoul Investment: On October 20, 2013, Plaintiff invested the sum of $215,000 with Defendant HARDER that was evidenced by a similar "Addendum to Ownership of Note Purchase" (hereinafter "Rantoul Addendum").  Plaintiff's funds that were provided to Defendant HARDER for the Rantoul Investment were used to purchase a note that was to have been secured with a deed of trust in first position against title to three properties, i.e., 301 Century Blvd.; 209 E. Belle, and 215 E. Belle, all in Rantoul, Illinois.  Plaintiff was to have received a 19.5% return on his investment, and was to have been fully paid off by October 30, 2014.  Plaintiff is informed and believes and thereon alleges that all three properties were foreclosed upon by GLOER and/or FLORIDA KEYS,  and title to them was taken in the name of Defendant GLOER'S entity, Defendant FLORIDA KEYS.  A true and correct copy of the Rantoul Addendum is attached as **Exhibit "C"** to this Complaint, and incorporated herein by that reference.

c. The Oregon Investment: On or about January 24, 2014, Plaintiff invested the sum of $307,840 with Defendant HARDER through another of HARDER'S "Addendum to Ownership Real estate (sic) Purchase" documents (hereinafter the "Oregon Addendum).  The funds were to have been invested in a note secured by a deed of trust in first position against title to real property located at 23860 Beavercreek Rd., Beavercreek, Oregon.  Plaintiff was to receive the sum of $341,100 on or before July 24, 2014, which was to bear a rate of return

of 20% per annum if Plaintiff was not paid by the due date, and would then be payable by the end of 1 year, or January 23, 2015. A true and correct copy of the Oregon Addendum is attached as **Exhibit "D"** to this Complaint, and incorporated herein by that reference.

d. The Ohio Investment: On or about February 10, 2014, Plaintiff invested the sum of $525,000 with Defendant HARDER and received another of HARDER'S "Addendum to Ownership of Real Estate  Purchase" documents (hereinafter the "Ohio Addendum"). The funds were to have been used for the purchase of real property located at 13455 Dressler Ave., Garfield Heights, Ohio. The Ohio Addendum provided for Plaintiff to receive the sum of $605,000 on or before August 10, 2014, therefore within 6 months of the date of Plaintiff's investment, and it was to bear a rate of return of 20% per annum if Plaintiff was not paid by the due date, and would then be payable by the end of 1 year, or by February 9, 2015. A true and correct copy of the Ohio Addendum is attached as **Exhibit "E"** to this Complaint, and incorporated herein by that reference.

e. The New Mexico Investment: On or about February 15, 2014, Plaintiff invested the sum of $542,700 with Defendant HARDER and received another of HARDER'S "Addendum to Ownership of Real Estate Purchase" documents (hereinafter the "New Mexico Addendum"). The funds were to have been used for the purchase of real property located at 3220 in W. County, Hobbs, New Mexico 88240. The New Mexico Addendum provided for Plaintiff to receive back the sum of $603,000 on or before August 15, 2014, therefore within 6 months of the date of Plaintiff's investment, and a rate of return of 20% per annum if Plaintiff was not paid by the due date, and would then be payable by the end of 1 year, or by February 14,  2015. A true and correct copy of the New Mexico Addendum is attached as **Exhibit "F"** to this Complaint, and incorporated herein by that reference.

f. The Cheney Investment: On or about March 20, 2013, Plaintiff invested the sum of $390,000 with Defendant HARDER, with which HARDER purchased a 50% interest in a note secured by a mortgage against property located at 6452 San Casa Drive, Englewood, FL 34224. The Plaintiff's investment was to have been secured by a first deed of trust against title to the property. The note in which Defendant HARDER invested Plaintiff's funds

provided for no payments until June of 2016, and then monthly payments of $1,564.26 for another five (5) years, and then a final balloon payment of $47,146.86 was due. HARDER arranged for Plaintiff to be the co-owner of the note with HARDER's LLC, Defendant SOUTHWEST.

        g. The Energy Transaction: On February 14, 2014. Plaintiff was induced by HARDER to provide him funds in the sum of $400,000 for an investment in an Energy Company. The investment was to have been evidenced by a note secured by a deed of trust in first position against a condominium unit Defendant HARDER owned, which was located at 235 Market Street, #610, San Diego, CA 92101. This investment with Defendant HARDER was to be with paid interest to Plaintiff in the sum of $6,666.67 monthly, and been paid off in full by January 5, 2015. Attached hereto as **Exhibit "G"** and made a part hereof by reference is a true and correct copy of the "Promissory Note" prepared by Defendant HARDER, representing the transaction.

<u>FIRST CAUSE OF ACTION</u>

(Fraud, Against Defendants HARDER and SOUTHWEST)

20: Plaintiff realleges and incorporates herein by that reference paragraphs 1-19 of this Complaint, as if the same were set forth in full.

21. Throughout the course of the Plaintiff's investments with Defendant HARDER, which investments are described above, Defendant HARDER represented to Plaintiff that his funds would be invested in notes secured by first deeds of trust that were recorded against title to real property. In addition, Defendant HARDER represented to Plaintiff in writing that Plaintiff's funds would be fully secured and repaid to him by the dates specified in the Addendum agreements he prepared and transmitted to Plaintiff, and that these investments were as good as notes secured by first trust deeds in representing the terms of Plaintiff's investments, and that Plaintiff would be paid a rate of return of 20% on his invested funds if they were not repaid by the dates specified in each of the instruments.

22. Defendant HARDER's representations were false. The true facts were that:

        a. Defendant HARDER had no intention to provide Plaintiff with the actual promissory notes secured by deeds of trust in first position against title to each respective real

property. Instead, he used Plaintiffs' funds to purchase for his own benefit speculative, distressed notes, distressed properties, or partial interests in distressed properties, leaving Plaintiff unsecured and completely off of title to the properties. .

b. Rather than protecting Plaintiff's invested funds with notes secured by first deeds of trust, as he represented he would, Defendant HARDER, individually and through Defendant SOUTHWEST, provided Plaintiff with only the Addendum to Ownership of Real Estate Purchase instruments for the investments. On the Cheney Investment, rather than providing Plaintiff the expected note and first trust deed, Defendant merely provided Plaintiff with a partial interest in a Subordination Agreement dated May 23, 2014. Defendant HARDER intentionally failed and refused, and continues to fail and refuse, to provide Plaintiff with secured notes and first trust deeds or property titles he offered Plaintiff when he induced Plaintiff to turn over funds to him.

c. Defendant HARDER has not paid Plaintiff the funds he owes Plaintiff pursuant to the individual Addenda, or other instruments with which he purports to have taken title to, or an interest in real property investments through the use of Plaintiff's funds.

d. In the case of the New Mexico Investment, Defendant HARDER took title to the subject property in the name of Defendant SOUTHWEST, and collected rental payments thereon; all without turning those payments over to Plaintiff.

e. In the case of the Ohio Investment, Defendant HARDER took title to the subject property, again in the name of Defendant SOUTHWEST, and thereafter turned 50% of that title over to a third party (without Plaintiff's knowledge or consent), and then became involved in litigation with the third party and the property occupant, all in the name of Defendant SOUTHWEST, even though the only funds invested in the transaction came from Plaintiff.

f. In the case of the Rantoul Investment, Defendant HARDER did not even get his or Defendant SOUTHWEST's name on the investment instruments (the notes purchased from the bank in that transaction), but instead, allowed Defendant GLOER and /or GLOER's solely owned entity, Defendant FLORIDA KEYS, to take title to the notes, using Plaintiff's funds,

again without Plaintiff's consent.  Plaintiff is informed and believes, and thereon alleges, that Defendant GLOER thereafter foreclosed on these notes and took title to the three Rantoul properties in the name of FLORIDA KEYS, neither including, nor paying back Plaintiff. Defendant HARDER was aware of GLOER's actions, but misrepresented to Plaintiff that Plaintiff was being fully protected in each of the investments and would be fully secured and repaid his investment.

g.  In the Good Roof Investment, again Defendant HARDER turned Plaintiff's funds over to Defendant GLOER without protecting Plaintiff's position, and allowed Defendant GLOER to acquire title to the described notes without reference to Plaintiff, Defendant HARDER or Defendant SOUTHWEST.  Thereafter, Defendant GLOER has been collecting the payments on the notes associated with the Good Roof Investment (even though all the funds invested in them came from Plaintiff) and has used the funds as he sees fit, without making any payments to Plaintiff or to Defendant HARDER.

h.  In the Oregon Investment, Defendant HARDER had Plaintiff wire the investment funds to a law firm's trust account in the State of Oregon, representing that they would be used to acquire a first deed of trust note against a property commonly known as 23860 Beavercreek Rd., Beavercreek, Oregon.  But, in fact, Defendant HARDER provided no instructions to that law firm and Plaintiff's funds were used to purchase the note and deed of trust in the name of Defendant BAY AREA HOUSING, an entity owned and controlled by Defendant JODIE JONES.  Defendant HARDER took no steps to protect Plaintiff's investment and did not even get his own entity Defendant SOUTHWEST, named in the investment (although he provided Exhibit "D" to Plaintiff, representing that it somehow protected and secured Plaintiff's investment.  As it turned out, the property owner (a Todd Shippen), was in bankruptcy at the time Defendant HARDER placed Plaintiff's investment in the transaction, and apparently unaware of how to handle enforcement in a bankruptcy case, Defendant JONES sold the note and deed of trust (at a substantial discount) and kept all of the proceeds for herself (knowing full well that all the funds invested came from defendant HARDER's investment client, Plaintiff).  As a result, neither Plaintiff, nor Defendant

1    HARDER have any interest in either the property or the note, and Plaintiff is unpaid and

2    unsecured for the funds invested.

3          I. On the Energy Transaction, Defendant HARDER received the funds from Plaintiff,

4    reportedly placed them with Defendant JONES in expectation of energy royalty payments, but

5    failed to provide Plaintiff with the deed of trust that he represented would secure Plaintiff's

6    funds. It was not until Plaintiff retained attorneys in 2015 that Defendant HARDER finally

7    replaced the February 2014 note (Exhibit "G") with a Promissory Note and Deed of Trust

8    dated January 20, 2015 (prepared by or at the direction of Defendant HARDER and his

9    attorney). The replacement note provides for payments of $6,666.67 per month, but

10   Defendant HARDER has made none of the payments, and grace of his default, the note has

11   been accelerated, so that the entire principal ($400,000.00) and accrued interest are now due

12   and unpaid.

13         23. Defendant HARDER's representations to Plaintiff were intended to induce Plaintiff to

14   give complete control of the funds Plaintiff turned over to him for investment into notes secured by

15   first deeds of trust. Plaintiff relied on Defendant HARDER's representations to him in turning his

16   funds over to the Defendant. Plaintiff's reliance on Defendant HARDER's advice, consultation, and

17   particularly, his representations, that Plaintiff's funds would be invested only in notes secured by first

18   trust deeds, and that Plaintiff would be paid on his investments according to the terms of the written

19   instruments provided to him, was justified, because Plaintiff had known Defendant HARDER for

20   years, and had participated with Defendant HARDER in earlier business investments, and Defendant

21   HARDER always paid Plaintiff fully and timely the amounts he was owed on those earlier

22   investments. Therefore, Plaintiff had reason to trust Defendant HARDER, and to turn over his funds

23   to him to be invested as Defendant HARDER represented he would do.

24         24. Defendant HARDER, individually and through Defendant SOUTHWEST, proximately

25   caused the damages Plaintiff alleges to have suffered in the investments, in that but for the

26   representations to Plaintiff that his funds would be secured by first deeds of trusts against real

27   property, he would not have turned his funds over to Defendants for them to be invested on his behalf.

28         25. As a proximate result of the Defendant HARDER's misrepresentations to him, Plaintiff

has suffered damages as follows: (a) on the New Mexico Investment, the sum of $703,500; (2) on the Ohio Investment, the sum of $705,833; (c) on the Cheyney Investment the sum of $128,920; (4) on the Rantoul Investment, the sum of $270,900; (5) on the Good Roof Investment, the sum of $408,400; (6) on the Oregon Investment, the sum of $377,430; and (7) on the Energy Transaction; the sum of $433,335; all totaling the sum of $3,028,318, or such other and greater sum to be alleged according to proof.

26. Defendants' conduct alleged in this Complaint was fraudulent, malicious and oppressive, in that Defendants never provided the note and first trust deeds they represented they would provide to Plaintiff when they received his funds, and instead, used his funds to make investments in their own names and for their own benefit, all without risking any of their own money in the investments. Plaintiff is, therefore, entitled to an award of exemplary and punitive damages from said Defendants.

WHEREFORE, Plaintiff prays for judgment as hereinafter set forth.

<u>SECOND CAUSE OF ACTION</u>

(Fraud, Against Defendants HARDER; SOUTHWEST; GLOER; and FLORIDA KEYS)

27. Plaintiff realleges and incorporates herein by reference paragraphs 1-19 of this Complaint, as if the same were set forth in full.

28. Throughout the course of Plaintiff's investments with Defendants, which investments are described above, Defendant HARDER, on his own behalf, and on behalf of his co-defendants, represented to Plaintiff that his funds would be invested in notes secured by first deeds of trust that were recorded against title to real property in Plaintiff's name.  In addition, Defendant HARDER represented to Plaintiff in writing that Plaintiff's funds would be repaid to him by the dates specified in the Addendum agreements he prepared to represent the terms of Plaintiff's investments, and that Plaintiff would be paid a rate of return of 20% on his invested funds if they were not repaid by the specified dates.

29. Defendant HARDER's representations were false.  The true facts were that:

a. Defendant HARDER had no intention to provide Plaintiff with promissory notes in his name, secured by deeds of trust in first position against title to real property.  Instead, Defendant HARDER intended to and did turn Plaintiffs funds over to his co-Defendant

GLOER, who used them on behalf of himself, and his alter ego, Defendant FLORIDA KEYS, to invest in highly speculative real property investments referred to hereinabove as the Good Roof Investment and the Rantoul Investment. Defendants GLOER and FLORIDA KEYS were fully aware of the representations made by Defendant HARDER to Plaintiff, and ratified those representations, yet took title to the investments in their own names without risking any of their own funds.

b. Rather than protecting Plaintiff's invested funds with notes secured by first deeds of trust, when Plaintiff demanded documentation of his investments, Defendants HARDER, SOUTHWEST, GLOER and FLORIDA KEYS provided Plaintiff with only the Addendum to Ownership of Real Estate Purchase agreements that are described above, and which are attached to this complaint as Exhibit "A," Exhibit "B," and Exhibit "C." Defendants intentionally failed and refused, and continue to fail and refuse, to provide Plaintiff with the secured notes represented to induce Plaintiff to turn over his funds, or to the title to the properties received as a result.

c. Defendants HARDER, SOUTHWEST, GLOER and FLORIDA KEYS have paid Plaintiff only the sum of $20,800.00 on July 16, 2013 and the subsequent sum of $5,200.00 on February 27, 2014 on the Good Roof Investment, and had no intention of making any further payments on the underlying notes that were the subject of that investment. On the Rantoul Investment, Plaintiff was paid only the sum of $12,975.00 on March 20, 2014, and then nothing more. Plaintiff is informed and believes and thereon alleges that Defendants GLOER and FLORIDA KEYS have received monthly payments from the obligor on the Good Roof Investment in an amount to be alleged according to proof, but neither he, nor Defendants HARDER or SOUTHWEST have paid any further portion of the Good Roof Investment proceeds to Plaintiff, Defendant GLOER keeping and using said funds as he deemed appropriate.

30. Defendant HARDER's representations to Plaintiff were intended to induce Plaintiff to give Defendants complete control of the funds he turned over to them for investment into notes secured by first deeds of trust. Plaintiff justifiably relied on Defendant HARDER's representations

1    to him that Defendants would make the payments to him that were provided for under the terms of

2    the Addendum agreements that Defendant HARDER prepared in lieu of the notes and deeds of trust

3    he represented were to be provided to Plaintiff.  Plaintiff was justified in relying on Defendant

4    HARDER's advice and consultations regarding the Good Roof and Rantoul Investments because

5    Plaintiff had known Defendant HARDER for years, and had participated with Defendant HARDER

6    in several earlier business investments, and Defendant HARDER always paid Plaintiff fully and

7    timely the amounts he was owed on those earlier investments.  Therefore, Plaintiff had every reason

8    to trust Defendant HARDER, and to turn over his funds to him to be invested as Defendant HARDER

9    represented he would do.

10   32. Defendants HARDER and GLOER, individually and through Defendants SOUTHWEST

11   and FLORIDA KEYS,  proximately caused the damages Plaintiff alleges to have suffered in the Good

12   Roof and Rantoul Investments in that, but for the representations to Plaintiff that his funds would be

13   secured by first deeds of trusts against real property taken in his name, he would not have turned his

14   funds over to Defendants for them to be invested.

15   33.  As a result of the Defendants' misrepresentations to Plaintiff, he has suffered damages

16   in the Good Roof Investment in the sum of $408,400; and on the Rantoul Investment in the sum of

17   $270,900, in the total sum of $679,300, or such other and greater sum to be alleged according to

18   proof.

19   34. Defendants' conduct alleged in this Complaint was fraudulent, malicious and oppressive,

20   in that Defendants never provided the notes and first trust deeds they represented they would provide

21   to Plaintiff when they received his funds, and instead, used his funds to make investments in their

22   own names and for their own benefit, all without risking any of their own money in the investments.

23   Plaintiff is, therefore, entitled to an award of exemplary and punitive damages from said Defendants.

24   WHEREFORE, Plaintiff prays for judgment as hereinafter set forth.

25                      THIRD CAUSE OF ACTION
          (Negligent Misrepresentation , Against Defendants HARDER;
26                SOUTHWEST; GLOER; and FLORIDA KEYS)

27   35. Plaintiff realleges and incorporates herein by reference paragraphs 1-19 of the Preliminary

28   Allegations, as if the same were  set forth in full.

36. Throughout the course of Plaintiff's investments with Defendants, which investments are described above, Defendant HARDER, on his own behalf, and on behalf of his co-defendants, represented to Plaintiff that his funds would be invested in notes secured by first deeds of trust that were recorded against title to real property in Plaintiff's name. In addition, Defendant HARDER represented to Plaintiff in writing that Plaintiff's funds would be repaid to him by the dates specified in the Addendum agreements he prepared to represent the terms of Plaintiff's investments, and that Plaintiff would be paid a rate of return of 20% on his invested funds if they were not repaid by the specified dates.

37. When Defendant HARDER made the representations to Plaintiff that he could and would provide Plaintiff notes secured by Deeds of Trust in first position against real property to secure Plaintiffs' funds, he knew or should have known the representations were false and he the would be unable to do so. The true facts were that:

a. When Defendant HARDER made the representations to Plaintiff about the investments, HARDER had no reason to believe that he could provide Plaintiff with promissory notes in his name, secured by deeds of trust in first position against title to real property. Defendant HARDER negligently turned Plaintiffs funds over to his co-Defendant GLOER, who used them on behalf of himself, and his alter ego, Defendant FLORIDA KEYS, to invest in highly speculative real property investments referred to hereinabove as the Good Roof Investment and the Rantoul Investment. Defendants GLOER and FLORIDA KEYS were fully aware of the representations made by Defendant HARDER to Plaintiff, and ratified those representations, yet negligently took title to the investments in their own names without risking any of their own funds.

b. Rather than protecting Plaintiff's invested funds with notes secured by first deeds of trust, when Plaintiff demanded documentation of his investments, Defendants HARDER, SOUTHWEST, GLOER and FLORIDA KEYS negligently provided Plaintiff with only the Addendum to Ownership of Real Estate Purchase agreements that are described above, and which are attached to this complaint as Exhibit "A" and Exhibit "B." Defendants negligently failed and refused, and continue to fail and refuse, to provide Plaintiff with the secured notes

represented to induce Plaintiff to turn over his funds, or to the title to the properties received as a result.

c. Defendants HARDER, SOUTHWEST, GLOER and FLORIDA KEYS have paid Plaintiff only the sum of $20,800.00 on July 16, 2013 and the subsequent sum of $5,200.00 on February 27, 2014 on the Good Roof Investment, and had no intention of making any further payments on the underlying notes that were the subject of that investment.  On the Rantoul Investment, Plaintiff was paid only the sum of $12,975.00 on March 20, 2014, and then nothing more.   Plaintiff is informed and believes and thereon alleges that Defendants GLOER and FLORIDA KEYS have received monthly payments from the obligor on the Good Roof Investment in an amount to be alleged according to proof, but neither he, nor Defendants HARDER or SOUTHWEST have paid any further portion of the Good Roof Investment proceeds to Plaintiff, Defendant GLOER keeping and using said funds as he deemed appropriate.

38.  Defendant HARDER's representations to Plaintiff were intended to induce Plaintiff to give Defendants complete control of the funds he turned over to them for investment into notes secured by first deeds of trust.  Plaintiff justifiably relied on Defendant HARDER's representations to him that Defendants would make the payments to him that were provided for under the terms of the Addendum agreements that Defendant HARDER prepared in lieu of the notes and deeds of trust he represented were to be provided to Plaintiff.  Plaintiff was justified in relying on Defendant HARDER's advice and consultations regarding the Good Roof and Rantoul Investments because Plaintiff had known Defendant HARDER for years, and had participated with Defendant HARDER in several earlier business investments, and Defendant HARDER always paid Plaintiff fully and timely paid Plaintiff the amounts he was owed on those earlier investments.  Therefore, Plaintiff had every reason to trust Defendant HARDER, and to turn over his funds to him to be invested as Defendant HARDER represented he would do.

39.  Defendants HARDER and GLOER, individually and through Defendants SOUTHWEST and FLORIDA KEYS,  proximately caused the damages Plaintiff alleges to have suffered in the Good Roof and Rantoul Investments in that, but for the negligent representations to Plaintiff that his funds

would be secured by first deeds of trusts against real property taken in his name, he would not have turned his funds over to Defendants for them to be invested.

40.   As a result of the Defendants' negligent misrepresentations to Plaintiff, he has suffered damages in the Good Roof Investment in the sum of $408,400; and on the Rantoul Investment in the sum of $270,900, in the total sum of $679,300, or such other and greater sum to be alleged according to proof.

WHEREFORE, Plaintiff prays for judgment as follows.

## FOURTH CAUSE OF ACTION

(Fraud, Against Defendants HARDER; SOUTHWEST;
and JONES and BAY AREA HOUSING, LLC)

41.  Plaintiff realleges and incorporates herein by reference paragraphs 1-19 of this Complaint, as if the same were set forth in full.

42.   Throughout the course of the Plaintiff's investment with Defendant HARDER, SOUTHWEST, JONES; and BAY AREA HOUSING, which investment is described above, Defendant HARDER, on his own behalf, and on behalf of his co-defendants, and with their knowledge represented to Plaintiff that his funds would be invested in notes secured by first deeds of trust that were recorded against title to real property and would be assigned to Plaintiff.  In addition, Defendant HARDER represented to Plaintiff in writing that Plaintiff's funds would be repaid to him by the dates specified in the Addendum agreements he prepared to represent the terms of Plaintiff's investments, and that Plaintiff would be paid a rate of return of 20% on his invested funds if they were not repaid by the specified dates, all with the knowledge and ratification of Defendant JONES.

43.  Defendants' representations were false.  The true facts were that:

a.  Defendants had no intention to provide Plaintiff with an assignment of the promissory note secured by deed of trust in first position against title to real property.  Instead, Defendants intended for Plaintiff's funds to be turned over to Defendant JONES, who would and did use them on behalf of herself, Defendant BAY AREA HOUSING, to invest in a highly speculative real property investment referred to hereinabove as the Oregon Investment.

1   At the time of Plaintiff's investment, said Defendants knew and failed to disclose to Plaintiff

2   that the property owner/obligor was in a bankruptcy proceeding.

3       b. Rather than protecting Plaintiff's invested funds with a note secured by a first deed

4   of trust, Defendants HARDER, SOUTHWEST, JONES and BAY AREA HOUSING

5   provided Plaintiff with only the Addendum to Ownership of Real Estate Purchase agreement

6   that is described above, and which is attached to this complaint as Exhibit "D," although the

7   instrument provided no benefit to Plaintiff as it was not signed by Defendant JONES, who

8   acquired the actual title to the Oregon note. Defendants intentionally failed and refused, and

9   continue to fail and refuse to provide Plaintiff the secured note they offered to induce Plaintiff

10  to turn over his funds to them.

11      c. Plaintiff has only been paid four payments of $5,130.00 each, a total of $20,520.00

12  against the amount due for the Oregon Investment, through November 24, 2014, and no

13  payments have been made since then, and the principal amount of the investment has never

14  been paid back to Plaintiff. At the outset of the Oregon Investment, Defendant HARDER had

15  Plaintiff wire his investment funds, in the sum of $307,840 directly to Defendant JONES's,

16  attorneys. Defendant JONES then used Plaintiff's investment funds for her own and

17  Defendant BAY AREA HOMES, LLC's benefit. Specifically, Defendant JONES used the

18  funds that Defendant HARDER had Plaintiff forward to her attorneys to purchase two notes

19  secured by trust deeds recorded against real property in Beaverton, Oregon. In doing so,

20  Defendants recorded no interest whatsoever in the notes in Plaintiff's favor, nor even in

21  HARDER'S favor. Plaintiff is informed and believes, and thereon alleges that the homeowner

22  and obligor under the two notes had filed a Bankruptcy proceeding, during which Plaintiff is

23  further informed and believes and thereon alleges that Defendant JONES, then sold the

24  investment interest in the two notes to a third party for the sum of approximately $185,000,

25  and misappropriated the proceeds to her own use and benefit, knowing full well that she had

26  none of her own money in the investment and that it was entirely Plaintiff's.

27  44. Defendants' representations to Plaintiff were intended to induce Plaintiff to give

28  Defendants complete control of the funds he turned over to them for investment into the Oregon

notes in his name and for his benefit. Plaintiff justifiably relied on Defendants' representations to him that Defendants would make the payments to him that were provided for under the terms of the Addendum agreement that Defendant HARDER prepared in lieu of the notes and deeds of trust he represented were to be provided to Plaintiff. Plaintiff was justified in relying on Defendants' advice and consultations regarding the Oregon Investment because Plaintiff had known Defendant HARDER for years, and had participated with Defendant HARDER in several earlier business investments, and Defendant HARDER paid Plaintiff fully and timely the amounts he was owed on those earlier investments. Therefore, Plaintiff had every reason to trust Defendant HARDER, and his associate, Defendant JONES, and to turn over his funds to them to be invested as Defendants represented they would do.

45. Defendants HARDER and JONES, individually and through Defendants SOUTHWEST and BAY AREA HOUSING, proximately caused the damages Plaintiff alleges to have suffered in the Oregon Investment in that, but for the representations to Plaintiff that his funds would be secured by deeds of trust against real property, he would not have turned his funds over to Defendants for them to be invested on his behalf.

46. As a result of the Defendants' misrepresentations to Plaintiff, he has suffered damages in the Oregon Investment in the sum of $377,430, or such other and greater sum to be alleged according to proof.

47. Defendants' conduct, as alleged above, was fraudulent, malicious and oppressive, in that Defendants never provided the note and first trust deeds they were obligated to provide to Plaintiff when they received his funds that Defendant was to invest for him. Instead, Defendants used the funds for their own benefit, took the note in their own name, provided Plaintiff merely with the Addendum described above in this complaint, which was, and is, entirely inadequate to protect Plaintiff's funds, and then sold the investment interest to a third party without payment to Plaintiff. Plaintiff is, therefore, entitled to an award of exemplary and punitive damages from Defendants.

WHEREFORE, Plaintiff prays for judgment as hereinafter set forth.

/ / / / /

/ / / / /

1

## FIFTH CAUSE OF ACTION

2

(Breach of Contract, Against Defendants HARDER and SOUTHWEST)

3   48.   Plaintiff realleges and incorporates herein by that reference paragraphs 1-11 of this

4   Complaint, and paragraphs 20-26 of the First Cause of Action, as if the same were set forth in full.

5   49.   On February 10, 2014, Defendants breached the written Ohio Addendum they provided

6   to Plaintiff for the Ohio Investment.  On February 15, 2014, Defendants breached the written New

7   Mexico Addendum between the parties for the New Mexico Investment.   On January 24, 2014,

8   Defendants breached their written Oregon Addendum provided to Plaintiff for the Oregon Investment.

9   Since those dates, Defendants failed and refused, and continue to fail and refuse to make the payments

10   due Plaintiff under the foregoing Addenda / Agreements.

11   50.   Defendants breach of the written Addendum Agreements they entered into with the

12   Plaintiff are the proximate cause of the damages Plaintiff alleges to have suffered, as alleged herein.

13   51.   Plaintiff has been damaged in the sum of $705,833 as a proximate result of Defendants'

14   breach of their obligations to Plaintiff under the Ohio Addendum, that was part of the Ohio

15   Investment; Plaintiff has been damaged in the sum of $703,500 as a proximate result of Defendants'

16   breach of their obligations to Plaintiff under the New Mexico Addendum that was part of the New

17   Mexico Investment; and Plaintiff has been damaged in the sum of $377,430 as a proximate result of

18   Defendants' breach of their obligations to Plaintiff under the Oregon Addendum for the Oregon

19   Investment, all to Plaintiff's damage in the sum of $1,786,763.

20   WHEREFORE, Plaintiff prays for judgment as hereinafter set forth.

21

## SIXTH  CAUSE OF ACTION

22

(Breach of Contract , Against Defendants HARDER; SOUTHWEST;
GLOER; and FLORIDA KEYS)

23

24   52. Plaintiff realleges and incorporates herein by reference paragraphs 1-19 of this Complaint,

25   as if the same were set forth in full.

26   53.   On March 16, 2014, Defendants breached the written Good Roof Addendum provided

27   to Plaintiff for the Good Roof Investment.  On October 20, 2013, Defendants breached the written

28   Rantoul Addendum between the parties for the Rantoul Investment.  Since those dates, Defendants

failed and refused, and continue to fail and refuse to make the payments due Plaintiff under the foregoing Agreements.

53.  Defendants breach of the written Addendum Agreements they entered into with the Plaintiff are the proximate cause of the damages Plaintiff suffered, as alleged herein.

54.  Plaintiff has been damaged in the sum of $408,400 as a proximate result of Defendants' breach of their obligations to Plaintiff under the Good Roof Addendum for the Good Roof Investment; and Plaintiff has been damaged in the sum of $270,900 as a proximate result of Defendants' breach of their obligations to Plaintiff under the Rantoul Addendum for the Rantoul Investment.  The total damages to Plaintiff from said instruments is the sum of $679,300.

WHEREFORE, Plaintiff prays for judgment as hereinafter set forth.

## SEVENTH  CAUSE OF ACTION

(Against Defendants HARDER and SOUTHWEST for Violations of the Federal and  California Corporate Securities Law - Material Misrepresentations in Securities Transactions)

55. Plaintiff realleges and incorporates herein by reference paragraphs 1-54 of this Complaint, as if the same were set forth in full.

56.  As a result of Defendants' material misrepresentations  made to Plaintiff, as alleged herein, which misrepresentations Plaintiff became aware of within the 12 months preceding the filing of the complaint in this action,  Defendants are liable to Plaintiff, who is entitled, in lieu of rescission, to sue for damages as a result of Defendants' disposition of the consideration Plaintiff paid them for the investments he made through the Defendants.

57.  The value of the securities Defendants sold to Plaintiff, as represented,  was the total sum of $3,028,318.  Plaintiff has received only the sum of $26,000 in income from the securities.

WHEREFORE, Plaintiff prays for judgment as hereinafter set forth.

## EIGHTH  CAUSE OF ACTION

(Against Defendants HARDER and SOUTHWEST for Violations of the Federal and California Corporate Securities Law - Securities Sold in Violation of Permit Requirements)

58. Plaintiff realleges and incorporates herein by reference paragraphs 1-57 of this Complaint, as if the same were set forth in full.

59. The securities transactions that are the subject of this action required a permit from either the Securities Exchange Commission or from the State of California Corporations Commissioner pursuant to the applicable provisions of the United States Code and/or the California Corporations Code Sec. 25503. Within the 12 months preceding the filing of this action, Plaintiff became aware of the fact that Defendants had not, and have not applied to either the S.E.C. or the Corporations Commissioner for a permit to conduct the securities transactions that are the subject of this complaint.

60. As a result of Defendants' failure to obtain the required permit prior to conducting the securities transactions with Plaintiff that are the subject of this action, Defendants are liable to Plaintiff, who is entitled, in lieu of rescission, to sue for damages as a result of Defendants' disposition of the consideration Plaintiff paid them for the investments he made through the Defendants, and Plaintiff is thereby entitled to recover the sum of $3,028,318 for said damages.

WHEREFORE, Plaintiff prays for judgment as hereinafter set forth.

## NINTH CAUSE OF ACTION

(Against Defendants, HARDER, and SOUTHWEST, for Breach of Fiduciary Duty)

61. Plaintiff realleges and incorporates herein by reference paragraphs 1-60 of this Complaint, as if the same were set forth in full.

62. At all times herein mentioned, Plaintiff utilized the services of, and relied on the expertise of Defendant HARDER to invest Plaintiff's family funds, and particularly for Defendant's services directed at investing Plaintiff's funds in notes secured by first trust deed investments.

63. In his capacity as Plaintiff's "Investment Advisor," as that term is defined in California Corporations Code § 25009, and/or as a Real Estate Broker, as the term is defined under California law, Defendant HARDER had a duty to honestly and diligently represent Plaintiff in all aspects of his real estate investments on which he was advising Plaintiff and investing Plaintiff's funds, or inducing him to enter, including the transactions that are the subject of this action.

64. By reason of that agency, and by reason of Defendant HARDER serving as Plaintiff's professional investment advisor, Defendant HARDER was in a fiduciary relationship with Plaintiff.

65. Plaintiff had faith and confidence in Defendant HARDER, and believed him to be an experienced and professional Investment Advisor, who would fairly, honestly, and competently

1    represent and protect Plaintiff's interests in all dealings, investment transactions, and security

2    transactions with him.  In justifiable reliance thereon, Plaintiff chose Defendant HARDER  as his

3    Investment Advisor, and broker, and further refrained from taking other measures to protect his

4    invested funds, and otherwise protect himself from the effects of the misrepresentations of fact

5    Defendants made to him, as described above.

6        66.  In participating with Plaintiff in the real estate investment transactions described above

7    in this Complaint, and in representing Plaintiff as his Investment Broker in the Security transactions

8    that are the subject of this action, Defendant HARDER, among other things, intentionally or

9    negligently failed to disclose to Plaintiff his true intent with respect to the funds Plaintiff entrusted

10   him with for purposes of investing them in notes secured by first trust deeds against title to real

11   property.  Defendant HARDER failed to adequately investigate the investments into which he was

12   placing Plaintiff's funds, and he failed to adequately document and protect Plaintiff's interest in the

13   investments.  Defendant failed to disclose to Plaintiff that he never intended to actually invest

14   Plaintiff's funds in notes secured by first trust deeds assigned to Plaintiff, and that instead, Plaintiff's

15   funds were, without Plaintiff's knowledge or consent, to be invested in, and were indeed, invested

16   in highly speculative real estate investments to the benefit of Defendant HARDER and/or his

17   associates. Defendant HARDER further failed to advise Plaintiff that he intended to, and did in fact,

18   obtain an interest in and to personally gain from the security transactions that he induced Plaintiff to

19   enter into, all without investing any of his own personal funds, but instead, by relying on the use of

20   Plaintiff's funds to do so, without Plaintiff's knowledge or consent.

21       67.  As a direct and proximate result of Defendant's breach of his fiduciary duties owed to

22   Plaintiff, Plaintiff was caused damages and was induced to and did, either directly or indirectly, turn

23   over to Defendant  the sum of $3,028,318, or such other sum to be alleged according to proof.

24       68.  When acting in the manner alleged above in this Complaint, Defendant breached his

25   fiduciary duties to Plaintiff, and acted with full knowledge of the consequences and damages being

26   caused to Plaintiff.  Consequently, Plaintiff alleges Defendant's conduct was willful, oppressive and

27   malicious.  Accordingly, Plaintiff is entitled to punitive and/or exemplary damages against Defendant

28   HARDER.

WHEREFORE, Plaintiff prays for judgment against Defendant as set forth below.

TENTH CAUSE OF ACTION

(Against Defendants, HARDER, and SOUTHWEST, GLOER
and FLORIDA KEYS for an Accounting)

69.  Plaintiff realleges and incorporates herein by reference paragraphs 1-68 of this complaint, as if the same were set forth in full.

70.  The exact amount of money due from Defendants to Plaintiff is unknown to Plaintiff and cannot be ascertained without an accounting of the funds Plaintiff provided to Defendants for them to be invested in the security transactions or investments that are the subject of this action, and the receipts by Defendants from the investments into which Plaintiff's funds were placed.

71.  On or about January 1, 2014, and numerous times thereafter, Plaintiff demanded that Defendants account for the aforementioned funds Plaintiff turned over to them to be invested in notes secured by first deeds of trust recorded against real property, as well as the receipts by them from the investments, and to pay the amount found due to Plaintiff, but Defendants have failed and refused, and continue to fail and refuse, to render the accounting or accountings, and pay Plaintiff.

WHEREFORE, Plaintiff prays for judgment against Defendants as hereinafter set forth:

ELEVENTH CAUSE OF ACTION

(Against Defendants MATTHEW HARDER and CHRISTINE MARTINEZ, individually, and as trustees of CHRISTIE MARTINEZ AND MATTHEW HARDER REVOCABLE TRUST DATED DECEMBER 1, 2007, for Judicial Foreclosure)

72.  Plaintiffs reallege and incorporate herein by reference paragraphs 1, 3, and 9 of the Preliminary Allegations, as if the same were set forth in full.

73.  Defendant CHRISTINE MARTINEZ aka CHRISTIE MARTINEZ,  is, and was at all times mentioned herein, a resident of the State of California.

74.  Defendant MATTHEW HARDER and CHRISTINE MARTINEZ are husband and wife, and are the Trustees of Defendant CHRISTIE MARTINEZ AND MATTHEW HARDER REVOCABLE TRUST DATED DECEMBER 15, 2007.

75.  On or about January 20, 2015, Defendants MATTHEW HARDER and CHRISTIE MARTINEZ, as Trustees of the CHRISTIE MARTINEZ AND MATTHEW HARDER

REVOCABLE TRUST DATED DECEMBER 15, 2007, executed and delivered to Plaintiff a Promissory Note in the amount of $400,000.00, with interest at the annual rate of 20%, payable as follows: Monthly payments of interest only in the amount of $6,666.67, due on the 20th day of each month that a monthly payment is due, beginning February 20, 2015, and continuing through January 20, 2016, at which time all unpaid principal and interest accrued was due and payable in full.  The Promissory Note is referred to in this complaint as "the Note."  A true and correct copy of the Note is attached hereto, market **"Exhibit "G"** and incorporated by reference.

76.  On or about January 20, 2015, as security to plaintiff for the Note, Defendants HARDER and MARTINEZ executed a Deed of Trust conveying to Plaintiff as beneficiary, that certain real property located at 235 Market Street, #610, San Diego, California, which is more specifically described in the Deed of Trust attached hereto as Exhibit "H," and incorporated herein by that reference.  The Deed of Trust was recorded on January 21, 2015 in the Official Records of San Diego County, as Document # 2015-0023560.

77.  Defendant HARDER and MARTINEZ have defaulted under the terms of the Note, in that they have failed and refused, and continue to fail and refuse, to pay the monthly payments coming due on the note as of the payment due on February 20, 2015, as well as the principal balance of the Note, which has been accelerated by grace of Defendants' default,  or any of the interest that has accrued, which is all, therefore, now due and owing.  Under the terms of the Note and Deed of Trust, the entire amount of the accelerated principal and accrued interest is now due and payable.  The amount due and payable consists of the principal sum of $400,000.00, accrued interest since February 20, 2015, in the sum of $26,666.68, plus the fees of collection in an amount not currently known.  Plaintiff will request leave of court to amend this complaint to allege the full amount of costs and fees as soon as the same is ascertained.

78. By the terms of both the Note and Deed of Trust, Defendants MATTHEW HARDER and CHRISTIE MARTINEZ, Trustees of the Christie Martinez, and Matthew Harder Revocable Trust Dated December 15, 2007, and each of them, promised that if any action were commenced on the Note or Deed of Trust, they would pay Plaintiff's reasonable attorney's fees and that these charges would also become a lien on the property.  By reason of the above-mentioned default by Defendants

HARDER and MARTINEZ, it has become necessary for Plaintiff to employ the STONE • SIEGEL

LAW FIRM, Michael E. Stone, Esq. and Leo B. Siegel, Esq.,  duly licensed to practice in all the

courts of the State of California, to commence and prosecute this foreclosure action.

WHEREFORE, plaintiff prays judgment against defendant as follows:

PRAYER FOR RELIEF

ON THE FIRST CAUSES OF ACTION

1.  For general damages in the sum of $3,028,318, or such other and greater sum to be alleged

according to proof;

2. For punitive damages.

ON THE SECOND CAUSES OF ACTION

3.  For general damages in the sum of $679,300.00;

4.  For punitive damages.

ON THE THIRD CAUSES OF ACTION

5.  For general damages in the sum of $377,430;

6.  For punitive damages.

ON THE FOURTH CAUSE OF ACTION

7.  For general damages in the sum of  $377,430;

8.  For punitive damages.

ON THE FIFTH CAUSE OF ACTION

9.  For general damages in the sum of  $1,786,763.

ON THE SIXTH CAUSE OF ACTION

10.  For general damages in the sum of $679,300.

ON THE SEVENTH AND EIGHTH CAUSES OF ACTION

11.  For damages in the amount equal to the difference between:

a.  the price at which the securities were bought, plus interest at the legal rate

from the date of purchase; and

b.  the value of the securities at the time they were disposed of by Plaintiff,

plus the amount of any income received by Plaintiff thereon;

12. For costs of suit herein incurred; and

13. For attorney's fees and treble damages, per Code of Civil Procedure § 1029.8; and

14. For such other and further relief as the court may deem just and proper.

<u>ON THE NINTH CAUSE OF ACTION</u>

15. For general damages in the sum of $3,028,318;

16. For punitive and exemplary damages.

<u>ON THE TENTH CAUSE OF ACTION</u>

17. For an accounting between Plaintiff and Defendants, and each of them;

18. For payment over to Plaintiff of the amount due from each Defendant as a result of the accounts;

19. For interest at the legal rate on the amount found due to Plaintiff as a result of the accounting;

<u>ON THE ELEVENTH CAUSE OF ACTION</u>

20. For judgment against Defendants HARDER and MARTINEZ in the total sum of $426,666.68 in principal, and accrued interest, together with interest at the rate of $222.22 per day from January 20, 2011, to the date of entry of judgment;

21. Against Defendants HARDER and MARTINEZ and each of them, for attorney's fees in an amount that the court adjudges reasonable;

22. Adjudging that all rights, claims, ownership, liens, titles, and demands of defendants, jointly and severally, are subsequent to and subject to the lien of the trust deed;

23. Adjudging that the deed of trust be foreclosed, that the property be sold according to law by a levying officer to be appointed by the court, that the proceeds of the sale be applied in payment of the amounts due to Plaintiff, that each Defendant and all persons claiming under each Defendant after execution of Plaintiff's Deed of Trust, whether as lien claimant, judgment creditor, claimant under a junior deed of trust, purchaser, lienholder, or otherwise, be barred and foreclosed from all rights, claims, interests, or equity of redemption in the property and every part of the property when time for redemption has elapsed;

24. Adjudging that Defendants HARDER and MARTINEZ are jointly and severally liable

for the payment of 100% of the obligation secured by the Deed of Trust, and that a deficiency judgment may be ordered following proceedings prescribed by law;

25. Permitting Plaintiff or any parties to this action to become a purchaser at the foreclosure sale;

26. Directing the levying officer, after the time for redemption has elapsed, to execute a deed to the purchaser of the property at the sale, and directing that the purchaser be let into possession of the property on production of the levying officer's deed;

<u>ON ALL CAUSES OF ACTION</u>

27. For costs of suit herein incurred; and

28 . For such other and further relief as the court deems just and  proper.

Dated: June 18, 2015                           STONE • SIEGEL LAW FIRM

                                                              / S /

By:      _____
                                                     Leo B. Siegel, Attorneys for Plaintiff
                                                     Louis Stromberg


<u>JURY TRIAL DEMAND</u>

Plaintiff hereby demands a trial by jury.

Dated: June 18, 2015                           STONE • SIEGEL LAW FIRM

                                                              / S /

By:      _____
                                                     Leo B. Siegel, Attorneys for Plaintiff
                                                     Louis Stromberg